UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SCOTT BAKER,

       Plaintiff,

v.                                   Case No. 8:25-cv-128-VMC-SPF

KURT A. HOFFMAN as
SHERIFF OF SARASOTA COUNTY,
FLORIDA,

       Defendant.

_____/

<u>**ORDER**</u>

This matter comes before the Court pursuant to Defendant Kurt A. Hoffman's Motion for Summary Judgment (Doc. # 34), filed on December 19, 2025, seeking summary judgment on all claims in this Florida Civil Rights Act ("FCRA") and Title VII of the Civil Rights Act of 1964 case. Plaintiff Scott Baker responded on January 26, 2026. (Doc. # 39). Sheriff Hoffman replied on February 5, 2026. (Doc. # 40). For the reasons that follow, the Motion is granted.

## I.   <u>Background</u>

### A. <u>Mr. Baker's Employment with SCSO</u>

Kurt A. Hoffman, as Sheriff of the Sarasota County Sheriff's Office ("SCSO"), operates the chief law enforcement agency within Sarasota County, Florida. (Doc. # 1 at 2). SCSO

1

employed Mr. Baker as a deputy from 2002 until February 2018, when he was promoted to sergeant. (Doc. # 34-2, Pl. Depo. at 18:1-17).

As a sergeant, Mr. Baker supervised deputies assigned to his squad, including Deputy Stacy Brown. (Id. at 68:12-18; 110:18-111:3). His responsibilities included monitoring dispatch calls, ensuring proper prioritization, and coordinating backup for deputies. (Id. at 80:14–81:2,85:10-87:5, 90:24-93:18). Mr. Baker had a duty to report concerns of discrimination or retaliation to SCSO's Human Resources Director, Staci Pickavance. (Id. at 96:23-101:10).

## B. SCSO's Lieutenant Promotional Process

SCSO promotes sergeants to lieutenant through an annual promotional process consisting of four components: a written examination, an oral board interview, a practical examination, and an interview with the Sheriff. (Id. at 172:5-173:8, 176:4-178:18, 186:4-189:4, 195:2-12, 202:15-203:20, Ex. 12, Ex. 15).

The written examination is administered by a third-party. (Doc. # 34-18, Pickavance Decl. at ¶ 4). The oral board interview and practical examination are scored by a promotional board consisting of five evaluators designated by the Sheriff, to include a member from an outside law

2

enforcement agency and at least one female member. (Pl. Depo. at Ex. 15; Pickavance Decl. at ¶ 6). As part of the regular scoring process for the practical examination and the oral board interview, both the highest and lowest evaluator scores are dropped before calculating the final scores for those portions of the exam. (Pl. Depo. at Ex. 15; Pickavance Decl. at ¶ 6). Once a final score is made, candidates are ranked accordingly and vacant positions are filled in rank order over the following year. (Pl. Depo. at 173:9-21, Ex. 15).

C. **Mr. Baker Sought Promotion in 2021 and 2022**

On multiple occasions, Mr. Baker has sought a promotion from sergeant to lieutenant. He first became eligible for promotion to lieutenant in 2021 after he obtained an associate's degree. (Id. at 26:1–12, 176:4-177:7, Ex. 1).

In May 2021, Mr. Baker ranked eighth overall in the lieutenant promotional process, but was not promoted. (Id. at 176:4-181:14, 184:1-9, 198:25-10, 201:25-202:11, Ex. 9, Ex. 10, Ex. 11; Pickavance Decl. at ¶¶ 7-8, Ex. 1).

In May 2022, he ranked tenth overall in the lieutenant promotional process, but again was not promoted. (Pl. Depo. at 198:25-199:10, 201:25-202:11, Ex. 13, Ex. 14; Pickavance Decl. at 10-11, Ex. 2).

D. **Deputy Stacy Brown's Complaints**

Sometime in 2021 or 2022, Deputy Brown came to believe that SCSO was subjecting her to unfair treatment and a hostile work environment. (Doc. # 39-1, Brown Decl. at ¶ 5; Doc. # 34-19, Brown Depo. at 17:10-15, 20:5-9). Deputy Brown eventually came to believe that certain SCSO employees, including Lieutenant Jonathan Varley, "spread false rumors and allegations, gossip and defamatory information" about her, and that SCSO employees were intentionally not providing her with backup support when she responded to calls for service. (Brown Decl. at ¶¶ 4-5; Brown Depo. at Ex. 1).

On August 6, 2022, Deputy Brown first complained of unfair treatment and a hostile work environment in a meeting with Lieutenant Neil Wilson. (Pl. Depo. at 113:13-19, 115:19-24, 145:13-147:13, Ex. 8; Brown Depo. at 17:10-15, 20:24-21:11, 25:10-26:15; Doc. # 34 at 5, n.5). Although Mr. Baker attended the meeting (Pl. Depo. at 146:7-11), Mr. Baker did not report that Deputy Brown was subjected to a hostile work environment or otherwise advocate on Deputy Brown's behalf. According to Mr. Baker, Deputy Brown only indicated there was a general hostile work environment, not that she was experiencing gender discrimination. (Pl. Depo. at 113:13-19,

4

115:19-24, 145:13-146:14, 147:15- 149:4, 151:22-152:24, Ex. 8 at 3; Brown Depo. at 25:10-26:15).

Instead, in the August 6, 2022 meeting, Mr. Baker's only concern was that Lt. Varley had requested him to put Deputy Brown on a performance improvement plan ("PIP") without going through preliminary coaching steps. Lt. Varley had requested the PIP when other deputies complained about Deputy Brown's communications with civilians. (Pl. Depo. at 141:19-144:24; Doc. # 34-20, Varley Depo. at 22:2-27:23). During the meeting, Mr. Baker accused Lt. Varley of tolerating blunt communications by another female deputy, Deputy Emilius, but not any discrimination towards females or favoring males generally. (Pl. Depo. at 142:21-143:16). Ultimately, SCSO never placed Deputy Brown on a PIP. (Doc. # 34-16, Leonard Depo. at 17:2-19).

Deputy Brown subsequently told Mr. Baker that she felt she was receiving inadequate backup during patrol calls. (Pl. Depo. at 147:15-149:4). Deputy Brown and Mr. Baker never expressed any concern to SCSO's Human Resource Director or others that Deputy Brown's issues with inadequate backup were related to gender discrimination. (Leonard Depo. at 12:1-13:11; Pl. Depo. at 151:22-152:24).

On November 8, 2022, Deputy Brown's attorney sent a letter to SCSO asserting that her inadequate backup constituted a hostile work environment and that she intended to bring claims of gender discrimination against SCSO. (Brown Depo. at Ex. 1). Upon receipt of the letter, Captain Bridgit Leonard began investigating Deputy Brown's claims. (Leonard Depo. at 9:16-11:20). As part of that investigation, Capt. Leonard met with Mr. Baker on November 11, 2022. (Pl. Depo. at 159:20-25). During the meeting with Capt. Leonard, Mr. Baker attributed any backup shortcomings solely to a "personality" issue between Deputy Brown and her co-workers. (Pl. Depo. at 113:13–19, 115:19–24, 162:17–24, Ex. 8 at 8). Mr. Baker never communicated to Capt. Leonard that he believed Deputy Brown received inadequate backup because of her gender. (Leonard Depo. at 12:24–13:11). Capt. Leonard instructed Mr. Baker to monitor Deputy Brown's calls to ensure she received appropriate backup and to provide documentation regarding Deputy Brown's calls for backup and what actions were taken in response. (Id. at 162:10-16). In addition, while the investigation was ongoing, Capt. Leonard moved Lt. Varley to work a different rotation and, thereafter, Lt. Varley had no interactions with either Deputy Brown or Mr. Baker. (Varley Depo. at 11:15-14:20, 17:10-19:20).

6

Captain Leonard again spoke to Mr. Baker on December 20, 2022, to request documentation compiled from the past month pertaining to Deputy Brown's dispatch calls and backup provided. Mr. Baker provided documentation on December 20, 2022, and December 29, 2022, which reflected there were no backup issues. (Pl. Depo. at 113:13-19, 115:19-24, Ex. 8 at 8; Leonard Depo. at 13:12-17). Capt. Leonard's final conclusion from the investigation was that Deputy Brown received adequate backup. (Leonard Depo. at 13:12-17).

SCSO's Human Resources Director, Staci Pickavance, also investigated Deputy Brown's concerns. (Brown Depo. at 21:12-24:23). On December 14, 2022, Ms. Pickavance concluded Deputy Brown's complaint, as set forth in her November 8, 2022 letter and subsequent communications with SCSO, did not raise any allegations of gender-based discrimination or hostile work environment. (Brown Depo. at 21:12-24:23, 27:10-29:3, Ex. 2, Ex. 3). Specifically, Ms. Pickavance concluded that Deputy Brown provided no evidence that any SCSO members engaged in discrimination because of her gender. (Id. at Ex. 3).

On January 5, 2023, Deputy Brown filed her charge of discrimination with the Florida Commission on Human Relations ("FCHR") and the Equal Employment Opportunity Commission ("EEOC"). (Brown Depo. at 29:12-30:2, 33:12, Ex. 4).

7

Subsequently, Deputy Brown retired from SCSO, effective February 6, 2023. (Brown Depo. at 32:9-33:10). In December 2023, Deputy Brown initiated a discrimination lawsuit against SCSO under the case name Brown v. Hoffman, No. 8:23-cv-2988-WFJ-NHA. (Brown Depo. at Ex. 6). In February 2024, Deputy Brown and SCSO reached a confidential settlement (Id. at Ex. 7), and Deputy Brown voluntarily dismissed her claims. (Id. at Ex. 8).

### E. Mr. Baker Sought Promotion in 2023

In 2023, Mr. Baker again participated in the lieutenant promotional process and ranked tenth, with a composite score of 82.26. (Pl. Depo. at 204:1-207:13, Ex. 18 at 1-2; Pickavance Decl. ¶¶ 13-14, Ex. 3).

As a result of the 2023 promotional process, SCSO promoted the highest ranked candidates to five lieutenant vacancies. (Pl. Depo. at 206:14-208:16; Pickavance Decl. at ¶¶ 13, 17, Ex. 3). Because he was not one of the top five ranked candidates, Mr. Baker was not promoted into a lieutenant position. (Pl. Depo. at 206:14-208:16).

### F. Mr. Baker's Complaints and Retirement from SCSO

On August 18, 2023, Mr. Baker filed a charge of discrimination with the FCHR and EEOC, alleging SCSO retaliated against him based on his purported opposition to

8

alleged gender discrimination against Deputy Brown. (Pl. Depo. at 221:14-222:5, Ex. 20). In relevant part, Mr. Baker's charge of discrimination describes SCSO's conduct as follows:

> Such retaliatory conduct has included but is not limited to allowing me to be subjected to hostile comments, gossip, and attitudes; scrutinizing my job performance in an unwarranted and disparate manner, including disciplining me and/or attempting to discipline me in such a disparate manner when compared to co-workers; and failing to provide me with a fair and equitable promotion process as I have tried to move forward in my career. I have attempted to switch my work rotation to avoid such retaliation, but such attempts have been denied. My complaints about such retaliatory conduct have not only been ignored, but have resulted in further retaliation, including complaints to my Captain in December of 2022. . . . My employer's discriminatory and retaliatory treatment is due to my decision to oppose the discrimination I witnessed and the retaliation I have experienced.

(Id. at Ex. 20). On September 27, 2023, Mr. Baker submitted his notice of retirement, effective October 11, 2023. (Id. at Ex. 19). He retired on October 11, 2023, the same week he turned 55 years old and first became eligible for retirement with full pension benefits. (Id. at 14:9-10, 102:24-103:7, 209:18-210:13, 220:15-221:11). In his employee exit questionnaire, Mr. Baker stated he was forced to retire because SCSO has shown that he was "not appreciated" and that he has "no future" with SCSO. (Id. at Ex. 24 at 6).

9

### G. Procedural History

On January 16, 2025, Mr. Baker initiated this action against SCSO. (Doc. # 1). In his complaint, Mr. Baker asserts claims of retaliation in violation of Title VII (Count 1) and the FCRA (Count 2). (Id.). SCSO answered the complaint (Doc. # 16), and the case proceeded through discovery.

SCSO now seeks summary judgment on all claims. (Doc. # 34). Mr. Baker has responded (Doc. # 39), and SCSO has replied. (Doc. # 40). The Motion is ripe for review.

## II.   Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if

10

it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true, and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the Court should not grant summary

11

judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

## III. Analysis

### A.   Failure to Dispute the SCSO's Statement of Material Facts

As an initial matter, Mr. Baker's response violates the Court's requirements for summary judgment briefing, as laid out in a March 18, 2025 order. (Doc. # 24). The Court requires every response to a summary judgment motion to

> include a section titled "Response to Statement of Material Facts." The opposing party's response must mirror the statement of material facts by admitting and/or denying each of the moving party's assertions in matching numbered paragraphs. Each denial must set forth a pinpoint citation to the record where the fact is disputed. Although the opposing party's response must correspond with the paragraph scheme used in the statement of material facts, the response need not repeat the text of the moving party's paragraphs. In deciding a motion for summary judgment, the Court will deem admitted any fact in the statement of material facts that the opposing party does not specifically controvert, provided record evidence supports the moving party's statement.

(Id. at 2-3).

12

Mr. Baker's response does not respond at all to SCSO's statement of material facts in its Motion. (Doc. ## 34, 39). Thus, Mr. Baker has failed to dispute any of SCSO's numerous statements of material fact. Therefore, provided the record evidence cited by the SCSO supports each statement, the Court deems admitted all facts in the Motion's statement of material facts.

**B.    Exhaustion of Administrative Remedies**

SCSO contends that Mr. Baker's claims are procedurally barred for two reasons. First, SCSO argues that any alleged retaliatory conduct prior to August 18, 2022 is time-barred. (Doc. # 34 at 13-14). Second, SCSO argues that Mr. Baker has failed to exhaust his administrative remedies regarding his resignation, because Mr. Baker's administrative charge of discrimination preceded his resignation and "raises no claim that his forthcoming resignation was retaliatory or constituted constructive discharge." (Id.). In response, Mr. Baker states:

> Plaintiff herein alleges that the 2023 promotional process was unfairly prejudiced against him in retaliation for his involvement in opposing the discriminatory and hostile work environment that Deputy Brown experienced. While background evidence of prior acts may be helpful in understanding the context of Plaintiff's retaliation claims, the

13

> primary act focused upon by Plaintiff was the promotional process in 2023, which occurred before his discrimination [] charge was filed in August of 2023. Moreover, the failure to provide Baker with a fair and untainted promotional process opportunity is specifically addressed and identified in said charge of discrimination.

(Doc. # 39 at 10). In addition, Mr. Baker contends "[t]hat the retaliation resulted in the constructive termination of Plaintiff is a natural and logical assertion that grew from the underlying allegations in his discrimination charge. As such, Plaintiff did not fail to properly exhaust his administrative remedies." (Id. at 11).

In essence, Mr. Baker states that his retaliation claim in the instant case relates to two alleged retaliatory acts: (1) the alleged failure to provide a fair promotional process in 2023, and (2) his alleged constructive termination. He argues that he has not failed to exhaust his administrative remedies because his August 18, 2023 charge of discrimination explicitly includes the allegation of an unfair promotional process, and his alleged constructive termination grew from the underlying allegations.

Upon review, the Court agrees with SCSO. Mr. Baker's retaliation claims are, in part, procedurally barred in two ways: (1) any alleged retaliatory conduct prior to August 18,

14

2022 is time-barred, and (2) Mr. Baker has failed to exhaust his administrative remedies as to his alleged constructive termination.

"As a prerequisite to filing both a Title VII and a FCRA action, a plaintiff must exhaust all administrative remedies by filing a timely charge with the appropriate agency. The scope of a plaintiff's judicial complaint under Title VII and the FCRA is limited by the scope of any administrative investigation that may reasonably arise from the plaintiff's initial charge of discrimination." Bridges v. Standard Pac. of Tampa GP, Inc., No. 8:06-cv-1937-SDM-TGW, 2007 WL 177688, at *1 (M.D. Fla. Jan. 19, 2007) (citing Gregory v. Georgia Dept. Of Human Resources, 355 F.3d 1277, 1279-80 (11th Cir.2004); and Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1387 (11th Cir.1998)). Florida courts generally analyze FCRA claims in the same manner as claims brought under Title VII. See Harper, 139 F.3d at 1387 ("The Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII." (citations omitted)).

Specifically, "[t]o maintain a Title VII or FCRA action, a plaintiff must have filed a charge with the EEOC [or

appropriate state agency] within 300 days of the last discriminatory act (365 days in the case of the FCRA)." Shedrick v. Dist. Bd. of Trustees of Miami-Dade Coll., 941 F. Supp. 2d 1348, 1365 (S.D. Fla. 2013) (citing E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1271 (11th Cir. 2002); and 42 U.S.C. § 2000e-5(e)(1); and Fla. Stat. § 760.11(1). "Only those claims arising within 300 [and/or 365] days prior to the filing of the charge of discrimination are actionable." Short v. Immokalee Water & Sewer Dist., 165 F. Supp. 3d 1129, 1142 (M.D. Fla. 2016) (citation omitted). "Untimely claims are barred." Id.

"A distinction is made between Title VII claims alleging discrete acts and those alleging continuing violations. An EEOC Charge raising a claim based upon discrete discriminatory or retaliatory acts must be filed within 300 days of the discrete act. If not filed within this time period, the discrete discriminatory acts are not actionable, even when they are related to acts alleged in timely filed charges. Continuing violations, on the other hand, are exceptions to this general rule regarding discrete discriminatory acts. When the allegedly unlawful employment practices amount to a continuing violation, the time period for filing an EEOC charge does not begin until the last

16

occurrence of the discrimination." Id. (citations and quotation marks omitted).

Notably, the Supreme Court has held that a failure to promote and a termination are both discrete acts. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.' Morgan can only file a charge to cover discrete acts that 'occurred' within the appropriate time period."); see also Makere v. Allstate Ins. Co., No. 24-11336, 2025 WL 3022497, at * 8 (11th Cir. Oct. 29, 2025) ("When a plaintiff alleges that the defendant took 'separate and discrete acts that repeatedly violate[d] the law, the continuing violation doctrine does not apply.' Instead, each discrete action 'is a separate actionable unlawful employment practice that starts a new clock for filing charges' with the EEOC. 'Discrete discriminatory' or retaliatory acts 'are not actionable if time barred, even when they are related to acts alleged in timely filed charges.'" (citations omitted)); see also Id. at *9 ("In this lawsuit, he brought Title VII discrimination and retaliation claims challenging his

17

termination, but his termination qualifies as a separate and discrete act, meaning he cannot rely on the continuing violation doctrine.").

Here, Mr. Baker filed his charge of discrimination on August 18, 2023. (Pl. Depo. at Ex. 20). To the extent that Mr. Baker seeks to challenge the 2022 or 2021 promotional processes, such claims are time-barred because his August 18, 2023 charge of discrimination was filed more than 365 days after those promotional processes concluded (in May of 2022 and 2021, respectively). Each alleged failure to promote constitutes a separate and discrete act, Morgan, 536 U.S. at 114, and therefore, Mr. Baker's August 18, 2023 charge of discrimination only covers the 2023 promotional process.

Likewise, Mr. Baker has failed to exhaust his administrative remedies as to his alleged constructive termination. He submitted his retirement letter on September 27, 2023, and his retirement was effective as of October 11, 2023. (Pl. Depo. at 14:9-10, 102:24-103:7, 209:18-210:13, 220:15-221:11). However, the alleged constructive termination is a discrete retaliatory act. Morgan, 536 U.S. at 114; Makere, 2025 WL 3022497, at * 8-9. Therefore, Mr. Baker's August 18, 2023 charge of discrimination pertaining to the promotional process cannot exhaust his administrative

18

remedies as to the constructive termination. See, e.g., Green v. SVC Mfg., Inc., No. 1:16-cv-04156-TWT-RGV, 2017 WL 3382566, at *5 (N.D. Ga. July 14, 2017) (finding constructive discharge to be a discrete act and not within the scope of earlier EEOC charge), report and recommendation adopted, No. 1:16-cv-4156-TWT, 2017 WL 3335756 (N.D. Ga. Aug. 4, 2017); see also Makere, 2025 WL 3022497, at * 9 ("[H]is termination qualifies as a separate and discrete act, meaning he cannot rely on the continuing violation doctrine.").

Accordingly, Mr. Baker's claims are limited to his challenge to the 2023 promotional process.

## C.   **The Merits**

"Title VII and the FCRA prohibit an employer from retaliating against an employee because the employee 'opposed any practice' made unlawful by those statutes." Weatherly v. ABC Legal, Inc., No. 23-11143, 2024 WL 2698023, at *7 (11th Cir. May 24, 2024) (citations omitted). In assessing a retaliation claim, courts may apply the McDonnell Douglas burden-shifting framework. Berry v. Crestwood Healthcare LP, 84 F.4th 1300, 1307 (11th Cir. 2023) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, (1973)). "First, the employee must establish a prima facie case of retaliation by proving that she engaged in statutorily protected conduct;

19

she suffered an adverse employment action; and a causal relation exists between the two events." Id. (citing Tolar v. Bradley Arant Boult Commings, LLP, 997 F.3d 1280, 1289 (11th Cir. 2021)). "If an employee establishes a prima facie case, the employer may proffer a 'legitimate, nonretaliatory reason' for the adverse action. If the employer does so, the employee must prove that the employer's proffered reason was a pretext for retaliation." Id. (citations omitted).

That said, "[t]he McDonnell Douglas framework is also not the only way to prove retaliation; instead, it is *one* way to prove retaliation with circumstantial evidence. Without relying on the McDonnell Douglas framework, an employee may prove retaliation with any circumstantial evidence that creates a reasonable inference of retaliatory intent." Id. at 1310. "Some of our precedents refer to this evidentiary approach as the 'convincing-mosaic framework.' But a 'convincing mosaic' is a metaphor, not a legal test and not a framework. The legal standard — and the question for the court at summary judgment — is only whether the evidence permits a reasonable factfinder to find that the employer retaliated against the employee. That legal standard applies no matter how an employee presents her circumstantial evidence." Id. at 1310-11 (citation omitted); see also Ismael

20

v. Roundtree, 161 F.4th 752, 760 (11th Cir. 2025) ("As in other contexts, a plaintiff may avoid summary judgment by presenting a wide range of circumstantial evidence. Such evidence may include '(1) suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual.'" (citation omitted)).

SCSO argues that Mr. Baker fails to establish a prima facie case of retaliation. (Doc. # 34 at 14). In response, Mr. Baker contends that there are genuine disputes of material fact as to each element of his retaliation claim. (Doc. # 39 at 11). The Court addresses each element before turning to an analysis under the convincing mosaic standard.

### i.   Statutorily Protected Conduct

"Under Title VII, an employee has engaged in protected activity if she has: (1) opposed an unlawful employment practice, or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII's retaliation provision." Smith v. City of Fort Pierce, Fla., 565 F. App'x 774, 776–77 (11th Cir. 2014) (quoting EEOC v. Total Sys. Servs., Inc., 221 F.3d

1171, 1174 (11th Cir. 2000)). The Eleventh Circuit has explained that to establish protected activity, "a plaintiff must show that she had a good faith, reasonable belief that the employer was engaged in unlawful employment practices" and that the "belief was objectively reasonable in light of the facts and record presented." Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311-12 (11th Cir. 2002); see also Saffold v. Special Counsel, Inc., 147 F. App'x 949, 951 (11th Cir. 2005). In the context of a Title VII retaliation claim, "opposed" means "to resist or antagonize; to contend against; to confront; resist; withstand." Patterson v. Georgia Pac., LLC, 38 F.4th 1336, 1347 (11th Cir. 2022)(quoting Crawford v. Metro. Gov't of Nashville & Davidson Cnty., 555 U.S. 271, 276 (2009)).

Here, Mr. Baker argues that he opposed SCSO's alleged discrimination against Deputy Brown because he "had made complaints on Brown's behalf and pushed back against or opposed Varley's harassment of Brown, including Varley's unwarranted attempt to place Brown on a PIP." (Doc. # 39 at 12) (citing Pl. Depo. at 143:1-7, 21-25, 146:13-17, 158:18-24, 168:8-21, 202:1-4, 242:10-245:14, 248:9-249:10).

First, the record is unclear as to exactly what "complaints" Mr. Baker made on Deputy Brown's behalf. Mr.

22

Baker generally cites to his deposition, in which he testified about certain meetings he attended with SCSO personnel regarding Deputy Brown. But Mr. Baker does not cite to record evidence indicating that he made any complaints to SCSO that Deputy Brown was being subjected to gender discrimination. On the other hand, SCSO has supplied record evidence that indicates: (1) at the August 6, 2022 meeting with Lt. Wilson, neither Mr. Baker nor Deputy Brown complained of any gender discrimination (Pl. Depo. at 113:13–19, 115:19–24, 145:13–146:14, 147:15– 149:4, 151:22–152:24, Ex. 8 at 3; Brown Depo. at 25:10–26:15); (2) at the November 11, 2022 meeting with Capt. Leonard, Mr. Baker attributed the problems faced by Deputy Brown to "personality" issues with co-workers rather than gender discrimination (Pl. Depo. at 113:13–19, 115:19–24, 162:17–24, Ex. 8 at 8); (3) Mr. Baker never communicated to Capt. Leonard that he believed Deputy Brown received inadequate backup due to her gender (Leonard Depo. at 12:24–13:11); and (4) in December 2022, Mr. Baker provided Capt. Leonard with documentation that reflected Deputy Brown was not actually receiving inadequate backup. (Pl. Depo. at 113:13–19, 115:19–24, Ex. 8 at 8; Leonard Depo. at 13:12–17). Accordingly, the record reflects there are no genuine disputes of material fact as to whether Mr. Baker made

complaints on Deputy Brown's behalf regarding alleged gender discrimination.

Second, the record does not support Mr. Baker's contention that his opposition to Lt. Varley's request to place Deputy Brown on a PIP constituted opposition to gender discrimination. True, Mr. Baker testified that he refused to put Deputy Brown on a PIP when he was asked to by Lt. Varley. (Pl. Depo. at 142:21-145:12). However, when explaining the reasons why he refused the PIP, Mr. Baker testified that his concerns were (1) that it would be inconsistent treatment in comparison to that of different deputies, and (2) it would be improper to implement a PIP without first implementing lower-level disciplinary actions, such as verbal counselling or a written warning. (Id. at 143:21-144:6). Specifically, as to the concern of inconsistent treatment, Mr. Baker testified he was concerned that Lt. Varley was not suggesting a PIP for a different female deputy, Deputy Emilius, even though "people don't like working with [her] either." (Id. at 143:9-16). The record therefore reflects that Mr. Baker's opposition to Lt. Varley's request for a PIP was not opposition to alleged gender discrimination against Deputy Brown. Instead, Mr. Baker opposed the PIP because he was concerned about purported inconsistent treatment between female deputies. Mr. Baker

24

provides no record evidence creating a genuine dispute of material fact as to whether his refusal to implement the PIP was based on an objectively reasonable belief that Deputy Brown was being subjected to gender discrimination.

Indeed, Mr. Baker testified that, at the August 6, 2022 meeting with Lt. Wilson, Mr. Baker did not have any basis or belief that Deputy Brown was being singled out because of her gender. (Pl. Depo. at 145:13-20). In response to being asked when he came to believe that Deputy Brown's treatment constituted gender discrimination, Mr. Baker testified "it wasn't until she filed her complaint." (Id. at 148:16-21). The deposition also included the following exchange:

> [SCSO's Counsel]: Right. So let me ask you this, then: In terms of her – because we talked about under the general orders there was – obviously, as her supervisor, you had a responsibility that if you believed there was discrimination or retaliation, you had an obligation to report that to the director of human resources; is that correct?
>
> [Mr. Baker]: Right.
>
> [SCSO's Counsel]: Did you ever do that?
>
> [Mr. Baker]: No, I didn't. Again --
>
> [SCSO's Counsel]: But I'm assuming it's because at no point did you fully see or believe that there was any – like, that she was actually being discriminated against because of her gender; is that right?

25

[Mr. Baker's Counsel]: Object to the form.

[Mr. Baker]: Yeah. I have already stated that. There was obvious harassment going on. It was obvious that she wasn't getting backup. But do I know the underlying reason for that specifically? I don't. She has not made that specific allegation.

[SCSO's Counsel]: Right. Which is why – I mean, honestly, that's why you never reported it to the director of HR, right?

[Mr. Baker]: That would be correct, yes.

(Id. at 151:21-152:24). Thus, the record reflects that Mr. Baker did not believe that Deputy Brown was being discriminated against on the basis of her gender until at least November 2022, when Deputy Brown submitted her internal complaint to SCSO and when Captain Leonard initiated an investigation. Thus, Mr. Baker's earlier opposition to Lt. Varley's request for a PIP cannot constitute opposition to gender discrimination.

In short, Mr. Baker has failed to establish that he opposed an unlawful employment practice. In addition, though he does not raise the argument, Mr. Baker fails to establish that he made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII's retaliation provision. "The participation clause . . . protects proceedings and activities which occur

26

in conjunction with or after the filing of a formal charge with the EEOC; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC." Total Sys. Servs., Inc., 221 F.3d at 1174. Mr. Baker's participation in SCSO's internal investigations of Deputy Brown's complaints does not constitute statutorily protected conduct for purposes of his retaliation claims.

Accordingly, the Motion is granted because there are no genuine disputes of material fact as to whether Mr. Baker engaged in any statutorily protected conduct. Mr. Baker fails to establish a prima facie case of retaliation.

### ii.  Adverse Action and Causal Connection

Even assuming Mr. Baker could demonstrate that he engaged in some statutorily protected conduct, SCSO argues that he did not suffer an adverse employment action that had any causal connection to such conduct. (Doc. # 34 at 18).

An adverse employment action for purposes of a Title VII retaliation claim is an action that "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington N. & Sante Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (citation omitted). This standard protects an employee from "a wider range of

27

retaliatory conduct than would be available under the standard applied" in Title VII discrimination cases. See Crawford v. Carroll, 529 F.3d 961, 974 (11th Cir. 2008). Nonetheless, an employee's decision to engage in protected activity "cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." Burlington, 548 U.S. at 68. As the Supreme Court has explained, "Title VII's anti-retaliation provision . . . applies only when the retaliatory action is 'materially adverse,' meaning that it causes 'significant' harm." Muldrow v. City of St. Louis, Missouri, 601 U.S. 346, 348 (2024) (citation omitted).

In attempting to establish an adverse employment action, Mr. Baker states as follows:

> In the present matter Plaintiff was threatened by Varley when he told Baker that he could transfer him anywhere; a statement that Plaintiff took as [a] threat and attempt to intimidate him for having opposed his efforts regarding Brown. A jury could conclude that such a comment was intended to have a "chilling effect" upon Plaintiff and any future efforts to oppose Varley's actions. . . . Likewise, the work environment for Plaintiff and its applicable context must be viewed in that Captain Leonard stated that Baker would never be promoted and then said Captain sat on Plaintiff's oral board for his attempt to promote in 2023, wherein Baker's attempt to promote was unsuccessful and his oral

> board score was curiously low compared to others arguably less qualified or experienced. The foregoing conduct, coupled with the constructive termination, constitute adverse actions, such that an ordinary person could also be dissuaded from continuing a career with an agency that has no intention of promoting him.

(Doc. # 39 at 14) (citations omitted).

Again, Mr. Baker cannot argue that his alleged constructive termination constituted an adverse employment action for purposes of this retaliation case. Mr. Baker failed to exhaust his administrative remedies as to that discrete act. In any event, Mr. Baker has still failed to establish that he suffered any adverse employment action.

Mr. Baker first argues that he suffered an adverse employment action when Lt. Varley "told Baker that he could transfer him anywhere; a statement that Plaintiff took as [a] threat and attempt to intimidate him for having opposed his efforts regarding Brown." (Id. at 14). It is unclear from the record when Lt. Varley made this comment to Mr. Baker, but Lt. Varley acknowledges that he made the comment and that he had the discretion to reassign Mr. Baker to different geographical locations during his shift. (Varley Depo. at 36:14-38:5, 42:21-43:15). Lt. Varley testified that he made the comment to suggest moving Mr. Baker to a different

29

geographic location because "his leadership style was affecting my employees." (Id. at 37:19-22).

Mr. Baker unpersuasively urges that "[a] jury could conclude that such a comment was intended to have a 'chilling effect' upon Plaintiff and any future efforts to oppose Varley's actions." (Id.)(citing EEOC v. Total Sys. Servs., 240 F.3d 899, 902 (11th Cir. 2001) (Barkett, C.J., dissenting)). To the contrary, a mere "uncomfortable conversation with a coworker, without more," does not constitute an adverse employment action. Davis v. Collins, 781 F. Supp. 3d 1258, 1279 (M.D. Fla. 2025). See also Muldrow, 601 U.S. at 348 (requiring the alleged retaliatory action to cause "significant harm"); Troupe v. DeJoy, 861 Fed. App'x 291, 295 (11th Cir. 2021) ("Title VII is not a 'general civility code' and does not make ordinary workplace conflicts actionable."). Here, the record does not reflect that Lt. Varley's comment caused Mr. Baker any significant harm, as Mr. Baker's only allegation of harm arises under his claim that the 2023 promotional process was unfair. Indeed, Lt. Varley's comment has little bearing Mr. Baker's retaliation claims, as Lt. Varley was not involved in the 2023 promotional process and Mr. Baker no longer worked with Lt. Varley after November 2022. (Pl. Depo. at 156:5-7; Varley Depo. at 12:22-

14:5, 39:17-40:1, 42:10-20); see also Davis, 781 F. Supp. 3d at 1279 (comments by HR representative not involved in alleged adverse employment actions deemed irrelevant). In sum, Lt. Varley's comment does not constitute an adverse employment action that is causally connected to Mr. Baker's alleged protected conduct.

Next, Mr. Baker argues he suffered an adverse employment action because (1) "Capt. Leonard stated that Baker would never be promoted," (2) Capt. Leonard sat on his 2023 oral board, and (3) "his oral board score was curiously low compared to others arguably less qualified or experienced." (Doc. # 39 at 14). The Court notes that Mr. Baker has not cited any evidence for his contention that the other promotion candidates were "less qualified or experienced" than himself.

As detailed in the sections above, SCSO promotes candidates annually based solely on their performance during a four-part test. (Pickavance Decl. at ¶ 3). Whether a particular candidate is promoted depends entirely on both that candidate's final ranking and the number of lieutenant positions vacated in a given year. (Pl. Depo. at 173:9-21, Ex. 15). During the 2023 promotional year, Mr. Baker was ranked tenth based on the outcome of the four-part test, and higher-ranked candidates were ultimately promoted to five

31

vacant lieutenant positions. (Pickavance Decl. at ¶¶ 13-17). Hypothetically, had 10 or more lieutenant positions become available during the 2023 promotional year, Mr. Baker would have been promoted into a lieutenant position, assuming he remained employed. (Pl. Depo. 172:9–174:21).

Thus, the fact that Mr. Baker was not promoted in 2023 is not an adverse employment action alone. Instead, Mr. Baker's challenge to the 2023 promotional process is entirely centered on his scores and final ranking. He believes that (1) his scores were "curiously low" and would have been higher if not for SCSO's alleged retaliation, and (2) his higher scores would have obtained him a higher ranking, such that he would have been among the highest ranked candidates who were selected for the five lieutenant vacancies.

Mr. Baker's 2023 promotional process board consisted of five evaluators: Capt. Leonard, Capt. Brian Ivings, Lt. Paul Cernansky, Major Ryan Brown, and Capt. Kenneth Rainey. (Pickavance Decl. ¶¶ 13, 15). All the evaluators were SCSO employees, except for Captain Rainey who was an employee of the Sarasota Police Department. (Id.). In his deposition, Mr. Baker testified that he believes Capt. Leonard, Capt. Ivings, Lt. Cernansky, and Maj. Brown (i.e., the SCSO employees) all engaged in retaliatory conduct by giving him lower rankings

32

in the oral board and practical examination. (Pl. Depo. at 212:11-18). However, Mr. Baker also testified that he has no knowledge of any comments or statements made by Capt. Ivings, Lt. Cernansky, and Maj. Brown that indicate these three individuals scored him in a retaliatory manner. (Id. at 213:1-22, 216:9-13). Nor has Mr. Baker presented any evidence indicating Capt. Ivings, Lt. Cernansky, and Maj. Brown harbored retaliatory animus against him.

The only evidence that Mr. Baker presents to demonstrate retaliatory animus among the promotional board is Capt. Leonard's alleged statement that Mr. Baker would never be promoted. (Doc. # 39 at 14; Pl. Depo. at 212:19-25). Mr. Baker does not identify anything else, beyond this statement, indicating that Capt. Leonard was retaliating against him. (Pl. Depo. at 212:19-25). According to Mr. Baker, Capt. Leonard told Deputy Brown that Mr. Baker would never be promoted, and Deputy Brown subsequently told Mr. Baker about the statement. (Id. at 168:25-170:10). In explaining the context of that comment, Mr. Baker testified that Deputy Brown told him that Capt. Leonard said Mr. Baker would never be promoted because he was "sloppy" and "cared too much about being friends with [his] deputies." (Id. at 170:1-6). Mr. Baker acknowledges that he has no knowledge that this

statement reflects anything other than Capt. Leonard's personal opinion and that his belief in the statement's retaliatory animus is speculative. (Id. at 239:24-241:21). Capt. Leonard testified that she does not recall making any such statement. (Leonard Depo. at 28:9-23). Deputy Brown was not asked about the statement during her deposition, but her unsworn declaration provides that Capt. Leonard "stated to me a couple times that Sgt. Baker would never be promoted." (Brown Decl. at ¶9).

SCSO argues the alleged statement by Capt. Leonard constitutes inadmissible hearsay within hearsay, to which no hearsay exception applies. (Doc. # 34 at 24, n.12). As the Eleventh Circuit has held, "[t]he general rule is that inadmissible hearsay 'cannot be considered on a motion for summary judgment.'" Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999) (citation omitted). "This rule also applies to testimony given on deposition." Id. at 1323 (citation omitted). Nevertheless, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." Id. (internal quotation marks omitted).

34

The Court finds that Mr. Baker's deposition testimony about Capt. Leonard's statement is inadmissible hearsay, but Deputy Brown's declaration about that statement is not hearsay. Deputy Brown's recounting of the statement to Mr. Baker is hearsay because it is presented for the truth of the matter that Deputy Brown asserted, i.e., that Capt. Leonard in fact made the alleged statement. But Deputy Brown's declaration about the statement is not hearsay because it is not presented for the truth of the matter asserted, but rather to demonstrate Capt. Leonard's alleged retaliatory animus. Accordingly, the Court will consider Capt. Leonard's alleged statement about Mr. Baker for purposes of this Motion.

Nonetheless, Capt. Leonard's alleged statement, that Mr. Baker would never be promoted, does not save Mr. Baker's claims from summary judgment. "To survive summary judgment, the employee must present a story, supported by evidence, that would allow a reasonable jury to find that the employer engaged in unlawful retaliation against the employee. The court must view the evidence in the light most favorable to the employee and draw all reasonable inferences in her favor. But inferences in favor of an employee can be based only on evidence — not on speculation. A scintilla of evidence in support of the employee's position is always insufficient.

35

When an employer offers abundant and uncontroverted independent evidence that no retaliation occurred, the employer will be awarded summary judgment." Berry, 84 F.4th at 1311 (cleaned up).

Here, Mr. Baker presents a mere scintilla of evidence in attempting to demonstrate retaliation, as he identifies no evidence of retaliatory animus other than Capt. Leonard's alleged statement. In his deposition, Mr. Baker admitted that his belief in the alleged statement's retaliatory animus is speculative. (Pl. Depo. at 239:24-241:21). Moreover, SCSO has presented abundant and uncontroverted evidence indicating that Capt. Leonard did not retaliate against Mr. Baker for his purported opposition to alleged gender discrimination against Deputy Brown. Indeed, the undisputed facts show that (1) at the August 6, 2022 meeting with Lt. Wilson, neither Mr. Baker nor Deputy Brown complained of any gender discrimination (Pl. Depo. at 113:13-19, 115:19-24, 145:13-146:14, 147:15- 149:4, 151:22-152:24, Ex. 8 at 3; Brown Depo. at 25:10-26:15); (2) at the November 11, 2022 meeting with Capt. Leonard, Mr. Baker attributed the problems faced by Deputy Brown to "personality" issues with co-workers rather than gender discrimination (Pl. Depo. at 113:13-19, 115:19-24, 162:17-24, Ex. 8 at 8); (3) Mr. Baker never communicated

36

to Capt. Leonard that he believed Deputy Brown received inadequate backup due to her gender (Leonard Depo. at 12:24–13:11); (4) in December 2022, Mr. Baker provided Capt. Leonard with documentation that reflected Deputy Brown was receiving adequate backup (Pl. Depo. at 113:13–19, 115:19–24, Ex. 8 at 8; Leonard Depo. at 13:12–17); and (5) Mr. Baker never expressed any concern to SCSO's human resource director that Deputy Brown's issues with inadequate backup were related to gender discrimination (Leonard Depo. at 12:1–13:11; Pl. Depo. at 151:22–152:24).

Even if the Court were to accept Mr. Baker's contention that Capt. Leonard's alleged statement reflected retaliatory animus, the record does not support his argument that he received lower scores because of any alleged retaliation. As part of the regular scoring process, both the highest and lowest evaluator scores are dropped. (Pickavance Decl. at ¶6). Excluding the highest and lowest scores, Mr. Baker's practical examination scores were 25, 25, and 24, and his oral board scores were 33, 33, and 33. (Id. at ¶¶ 13, 15, Ex. 3). Accordingly, among the scores that were used to compute Mr. Baker's final ranking, the scores that Capt. Leonard gave for Mr. Baker (i.e., 25 on practical examination and 33 on oral board) are either equal to or greater than the scores

37

that other evaluators gave Mr. Baker during the 2023 promotional process. Indeed, the scores that Capt. Leonard gave for Mr. Baker in the 2023 promotional process are largely aligned with the scores she gave for Mr. Baker in the 2021 and 2022 promotional processes:

| Captain Leonard's Scores for Mr. Baker | | |
|---|---|---|
| Year | Practical Examination | Oral Board |
| 2021 | 48 out of 60 points (80%) | 70 out of 100 points (70%) |
| 2022 | 24 out of 30 points (80%) | 35 out of 50 points (70%) |
| 2023 | 25 out of 30 points (83%) | 33 out of 50 points (66%) |

(Pickavance Decl. at ¶¶ 9-16).

Accordingly, there are no genuine disputes of material fact as to any adverse employment action or causal connection.

### iii. **Nonretaliatory Reasons and Pretext**

For the reasons set forth above, Mr. Baker has failed to establish a prima facie case for retaliation. Accordingly, the Motion is granted.

Even if Mr. Baker could establish a prima facie case, however, SCSO has supplied legitimate, nonretaliatory reasons for Mr. Baker's 2023 promotional process scores and his final ranking. Those reasons are reflected in the various evaluator sheets for Mr. Baker's 2023 promotional process. (Pl. Depo. at Ex. 17). The evaluator sheets include multiple pages of rubric-style scoring tables, rating scales, and spaces for

38

written notes by the evaluators. (Id.). Nothing in these evaluator sheets reflects any indication of retaliatory animus against Mr. Baker. Rather, all the evaluator notes reflect scoring and commentary on Mr. Baker's performance in answering the relevant questions. (Id.). Mr. Baker does not dispute that SCSO's four-part promotional process tests legitimate skills pertaining to the lieutenant position or that SCSO administers identical examinations each year to all lieutenant candidates. (Pl. Depo. at 172:5–173:8, 176:4–178:18, 186:4–189:4, 195:2-12, 202:15–203:20, Ex. 12, Ex. 15; Leonard Depo. at 20:2–23:8; Doc. # 34-17, Mruczek Depo at 11:4–13:9. 15:2-13, 20:3–21:7).

As SCSO has proffered nonretaliatory reasons, Mr. Baker bears the burden of proving that SCSO's proffered reasons are pretext for retaliation. Berry, 84 F.4th at 1307. "To prove that an employer's explanation is pretextual, an employee must cast enough doubt on its veracity that a reasonable factfinder could find it 'unworthy of credence.'" Id. (citation omitted). "If the employer's stated reason is legitimate — in other words, if it might motivate a reasonable employer to act — then the employee must address that reason head on and rebut it. An employee cannot rebut a reason by simply quarreling with the wisdom of it. Instead, she must

39

point to weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the justification. To avoid a summary judgment, an employee must establish a genuine dispute of material fact that the employer's reason is pretextual." Id. at 1307-08 (citations and quotation marks omitted). Here, in his attempt to show pretext, Mr. Baker states in full:

> Again, context matters, and a jury considering Capt. Leonard's statement regarding SCSO never going to promote Plaintiff, with the failure to promote while Leonard sat on the board, as well as Varley's intimidating threat to move Plaintiff certainly call into question whether Defendant's proffered reason may indeed be a pretext to engage in such retaliation; certainly a conclusion the fact finders could reach. Fueling such a theory is that, as Baker pointed out, the oral board and practical sections of the promotional process are very subjective and open to manipulation wherein a decision maker with animus towards Plaintiff could certainly adjust his scores in these areas such that it has an adverse effect on Plaintiff's promotional opportunity. Plaintiff described that he, based upon his experience as a Sergeant and with the promotional process, successful projects, and qualifications, did not believe it was logical that his score should be so low in this subjective area. As such, a jury could also conclude that Plaintiff's view is accurate and that Defendant's reason for not promoting Plaintiff was indeed a pretext.

(Doc. # 39).

40

Mr. Baker fails to establish any genuine dispute of material fact that SCSO's proffered reasons are pretextual. As stated earlier, Lt. Varley was not involved in the 2023 promotional process; thus Lt. Varley's alleged "intimidating threat" has no bearing on Mr. Baker's scores and ranking. Moreover, the mere scintilla of evidence of Capt. Leonard's statement fails to establish retaliatory intent. Even considering Capt. Leonard's statement, Mr. Baker still fails to establish pretext because he fails to address head on and rebut the proffered reasons for his scores in the evaluator sheets, including Capt. Leonard's evaluator sheets.

Finally, Mr. Baker's assertions that SCSO's promotional process was subjective and "open to manipulation" fail to establish pretext. Title VII does not prohibit employers from utilizing subjective criteria in making employment decisions. See Chapman v. AI Transport, 229 F.3d 1012, 1034 (11th Cir. 2000) (en banc) ("A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual bases upon which it based its subjective opinion."). Mr. Baker's conclusory belief that his scores were low fails to create any genuine dispute of material fact.

41

### iv.   <u>Convincing Mosaic</u>

For the reasons above, Mr. Baker's claims fail under the <u>McDonnell Douglas</u> framework. Accordingly, the Court now turns to assess his claims under the convincing mosaic standard.

Under that approach, "[t]he legal standard — and the question for the court at summary judgment — is only whether the evidence permits a reasonable factfinder to find that the employer retaliated against the employee. That legal standard applies no matter how an employee presents her circumstantial evidence." <u>Berry</u>, 84 F.4th at 1311; <u>see</u> <u>also</u> <u>Ismael</u>, 161 F.4th at 765 ("[T]he court must proceed to ask whether the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination [or retaliation] by the decisionmaker." (citation and quotation marks omitted)). "Such evidence may include '(1) suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual.'" <u>Id.</u> at 760.

Here, viewing the record in the light most favorable to Mr. Baker, his circumstantial evidence fails to create a

42

genuine issue concerning SCSO's alleged retaliation. First, Mr. Baker failed to establish that he engaged in any statutorily protected conduct that would give rise to alleged retaliation. Second, Mr. Baker's circumstantial evidence of retaliation is insufficient. The only evidence that Mr. Baker presents to establish SCSO's retaliatory animus is (1) Lt. Varley's comment that he could transfer Mr. Baker, and (2) Capt. Leonard's alleged statement that Mr. Baker would never be promoted. (Doc. # 39 at 14). Again, Lt. Varley's comment has no bearing on Mr. Baker's claims because Lt. Varley was not involved in the 2023 promotional process. Capt. Leonard's alleged statement is hardly enough to paint a convincing mosaic, and Mr. Baker himself admits that his belief in its retaliatory animus is speculative. (Pl. Depo. at 239:24-241:21). For the same reasons, Mr. Baker's arguments for pretext fail. Further, Mr. Baker presents no evidence of suspicious timing or systematically better treatment of similarly situated employees. His conclusory assertions that SCSO's process was "open to manipulation" and that "a jury could also conclude that [Mr. Baker's] view is accurate" fail to establish any genuine dispute of material fact.

The Motion is granted on all claims.

43

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendant Kurt A. Hoffman's Motion for Summary Judgment (Doc. # 34) is **GRANTED.**

(2)   The Clerk is directed to enter judgment in favor of Defendant Kurt A. Hoffman as Sheriff of Sarasota County and against Plaintiff Scott Baker on all counts of the complaint.

(3)   Thereafter, the Clerk is directed to terminate all pending deadlines and **CLOSE** the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 27th day of March, 2026.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

44